## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

PIERCE E. WEISLER,

        Plaintiff,

v.                                                  Civ. No. 12-0079 MV/CG

COMMUNITY HEALTH SYSTEMS, INC., a
Delaware corporation, COMMUNITY HEALTH
INVESTMENT COMPANY, LLC, a Delaware
corporation, COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORPORATION,
a Delaware corporation, and LEA REGIONAL
HOSPITAL, LLC, a New Mexico corporation,
d/b/a, LEA REGIONAL MEDICAL CENTER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Community Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 8] and Defendant Community Health Investment Company, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 9]. The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the motions are well taken and will be GRANTED.

## BACKGROUND

This case arises from alleged medical malpractice that Plaintiff Pierce E. Weisler ("Plaintiff") suffered related to a hip conversion surgery on December 9, 2008, at Lea Regional Hospital in Hobbs, New Mexico. Plaintiff alleges that Defendant Community Health Systems, Inc. ("CHSI") and Defendant Community Health Investment Company, LLC ("CHIC")

(collectively "Defendants") own, operate, or lease Lea Regional Hospital, and that Defendants therefore are liable pursuant to the doctrine of respondeat superior for the alleged medical malpractice of the hospital's employees and staff and are directly liable for negligent credentialing, training, retention, staffing, policy-making, and supervision. Defendants move to dismiss on the ground that the Court lacks personal jurisdiction over them.

In support of their motions, Defendants have presented the following evidence. Defendant CHSI is a Delaware corporation with its principal place of business in Tennessee, and Defendant CHIC is a Delaware limited liability company. Defendants are holding companies with no employees. Defendant CHSI issues shares that are publicly traded on the New York Stock Exchange. Defendants do not transact business in New Mexico, are not registered to do business in New Mexico, have not appointed agents for service of process in New Mexico, have no offices or places of business in New Mexico, have no real property, clients, or employees in New Mexico, and do not advertise, market, or offer services for sale in New Mexico.

Defendant CHSI indirectly owns, through subsidiaries, more than 130 hospitals nationwide, including Lea Regional Hospital, LLC d/b/a Lea Regional Medical Center ("Hospital"). Defendant CHSI does not operate any of the hospitals that it indirectly owns. There are five separate entities in the ownership chain between Defendant CHSI and the Hospital. Defendant CHIC has no ownership interest (either direct or indirect) in the Hospital and likewise does not operate the Hospital. Defendants do not control the day-to-day operations of the Hospital, Defendants maintain separate accounting and banking records from the Hospital, the Hospital is not designated as an agent for Defendants, and Defendants are not designated as agents for the Hospital. There is not and was not at the time of the injuries any overlap between the Board of Directors of Defendants and the Board of Trustees of the Hospital.

Defendants do not make clinical decisions or control diagnosis or treatment of patients at the Hospital, they do not maintain medical records at the Hospital, and they did not enter into an agreement to combine money, property, or time to provide treatment at the Hospital.   Defendants did not make any clinical decisions regarding Plaintiff, did not require the Hospital to adopt or maintain policies used in treating Plaintiff, did not make any representations to Plaintiff, did not pay, hire, employ, supervise, credential, or train the doctors or nurses who treated Plaintiff, did not furnish the equipment used in treating Plaintiff, and did not control the number of doctors and nurses at the Hospital or the manner in which their work was performed.

CHSPSC and the Hospital are parties to a management agreement ("Management Agreement"), through which CHSPSC provides limited consulting and management services to the Hospital.   Pursuant to the Management Agreement, the Hospital retains exclusive control over the assets and operation of the Hospital, but CHSPSC provides form policies to the Hospital, which the Hospital may adopt at its discretion.   Pursuant to the Management Agreement, CHSPSC recommended, and the Hospital's Board of Trustees chose to adopt, the "CHS Code of Conduct" and other elements of the "CHS Compliance Program."

In response to Defendants' motions to dismiss, Plaintiff has identified excerpts from the website www.chs.net.   The website excerpts display a "Facility Map" identifying six hospitals located in New Mexico that are served by "Community Health Systems."   The website also provides that by viewing the "CHS facilities" on the map, and accessing any job information on subsequent pages, the viewer will be "leaving the [CHSPSC] sponsored portion of the website," that "[CHSI] does not employ any employees, own (or lease) or operate any hospitals, or recruit or employ any physicians," that the job postings are "local in nature and all information has been provided solely by the sponsoring facility," and that the user agrees to "look solely to the

3

individual sponsor and to hold [CHSI] harmless for any act or omission."

Defendant's evidence indicates that the website www.chs.net is owned and operated by CHSPSC, and that the "CHS" logo displayed on the website is licensed to CHSPSC for use and owned by CHS/Community Health Systems, Inc.   In addition, the website specifically contains a "Legal Notice," which provides that "[CHSI] is a holding company and does not engage in any business activities other than those associated with being a publicly traded stock company," that the website—to comply with U.S. Securities and Exchange Commission ("SEC") and New York Stock Exchange ("NYSE") requirements of using "plain English"—presents information in consolidated fashion and uses inclusory language such as "we," "us," "our," and "the Company," that these inclusory statements are not intended to bind or imply that the actions of one legal entity should be attributed to another, and that each hospital affiliated with "[CHSI] is owned (or leased) and operated by a separate and distinct legal entity."

Plaintiff further has identified excerpts from form policies produced by Deming Hospital Corporation, d/b/a Mimbres Memorial Hospital ("Mimbres Hospital") in an unrelated litigation. The policy regarding recruiting and hiring provides that the "CHS Corporate Administration Department" handles all "key" recruiting for management positions and can provide assistance in recruiting for other positions, that postings on the "[c]orporate web site" require approval of the "CHS CEO or CFO," and that the "Corporate Group Vice President" must approve employee requisitions.   The policy regarding hospital safety and patient management bears the "CHS" logo and sets forth various policies for Mimbres Hospital.   The five "Position Description/Evaluation" forms also display the "CHS" logo and require the hired individual to acknowledge that he or she understands and will comply with the "CHS Code of Conduct."

4

Plaintiff also attaches an unverified and uncertified newspaper article from 2001 regarding hospitals remotely owned by Defendant CHSI.   The article includes quotes from the Chairman and Chief Executive Officer (CEO) of Defendant CHSI, in which the CEO states, "We are the sole medical provider in 85% of our communities, so we bring economic stability," and "If we recruit six to 10 physicians in a single community, that's good for economic development."   The author of the article also writes, "After [CHSI] takes over a hospital, [the CEO] focuses on raising sales by adding services and luring more doctors to town."

Plaintiff in addition points to discovery responses by Mimbres Hospital in an unrelated case, which indicate that CHSI owns Mimbres Hospital. Defendant CHSI attaches supplemental responses in which Mimbres Hospital clarifies that CHSI was a remote parent company and not a direct owner of Mimbres Hospital.   Plaintiff also identifies three answers filed by Defendant CHSI in unrelated cases, indicating that Defendant CHSI defended complaints for medical negligence against hospitals remotely owned by CHSI in New Mexico.

## STANDARD

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) test a plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction.   The Rule 12(b)(2) standard governing a motion to dismiss for lack of personal jurisdiction is well established.   When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists.   *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citations omitted). In the preliminary stages of litigation, this burden is "light," and prior to trial a "plaintiff is only required to establish a prima facie showing of [personal] jurisdiction."   *Doe v. Nat'l Med. Serv.*, 974 F.2d 143, 145 (10th Cir. 1992).   The plaintiff may make the required prima facie showing by

5

coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true. *See OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Only the well-pled facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true. *See Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Moreover, a plaintiff's jurisdictional allegations are not automatically accepted as true when contradicted by affidavit, although if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *See Wenz*, 55 F.3d at 1505.

## DISCUSSION

The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citation omitted). In New Mexico, a federal court has personal jurisdiction over a non-resident defendant only to the extent that the state's long-arm statute permits. *See Fid. & Cas. Co. v. Philadelphia Resins. Corp.*, 766 F.2d 440, 442 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986). New Mexico's long-arm statute, however, is coextensive with the Fourteenth Amendment's Due Process Clause, such that if jurisdiction is permitted under the Due Process Clause, it also is authorized by the long-arm statute. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citation omitted); *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54

(N.M. 2002) (citation omitted).

The Fourteenth Amendment's Due Process Clause requires that for a court to assert personal jurisdiction over a defendant, the defendant must have (1) sufficient "minimum contacts" with the forum state (2) such that subjecting the defendant to the court's jurisdiction will not offend traditional conceptions of fair play and substantial justice.   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).   The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there."   *World-Wide Volkswagen*, 444 U.S. at 297.

I.     Minimum Contacts

A plaintiff may satisfy the "minimum contacts" standard arising under the Due Process Clause by making a prima facie showing that the court may exercise either general or specific jurisdiction over the defendant.   Plaintiff does not indicate whether the Court's jurisdiction over Defendants is general or specific.   The Court therefore will consider both grounds.

A.     Specific Jurisdiction

Specific jurisdiction requires a plaintiff to show that (1) a defendant has "purposely avail[ed itself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities."   *OMI Holdings*, 149 F.3d at 1090-91 (citing *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 472 (1985)); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).   The actions by the defendant *itself* must have created the substantial connection with the forum.   *See OMI Holdings*, 149 F.3d at 1090-91 (the injury must arise out of "'actions by the defendant *himself* that create a substantial connection with the forum state") (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987)).

Plaintiff's prima facie burden regarding the minimum contact necessary to establish specific jurisdiction is less stringent than his burden with respect to general jurisdiction, because general jurisdiction does not require a nexus between the contact and underlying injury.   *See Rosenberg v. Deutsche Bank AG*, No. 11-CV-2200, 2012 WL 1963356, at *5 (D. Colo. May 22, 2012) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004)).

1.     Defendant CHSI

Plaintiff argues that Defendant CHSI has various minimum contacts with the Hospital that arise out of or relate to the underlying injuries in this case.   To meet his prima facie burden, plaintiff points to excerpts from the website www.chs.net and argues that the website constitutes proof that Defendant CHSI purposefully reached out to solicit business in New Mexico[1] and that Defendant CHSI is involved in recruiting and hiring individuals at the Hospital.   Defendant CHSI has presented evidence, however, that the website is not owned or operated by Defendant CHSI, but rather is owned and operated by CHSPSC, and that the "CHS" logo on the website is not owned or licensed to Defendant CHSI, but rather is licensed to CHSPSC for use.   Moreover, the website specifically provides that job information is not part of the CHSPSC sponsored portion of the website but rather has been provided solely by the sponsoring facility, that CHSI is a holding company with no employees, and that each local hospital is owned, leased, or operated by a separate and distinct legal entity and not by CHSI.

_____

[1]   Plaintiff maintains that the website provides that CHS's affiliates own, operate, or lease more than 110 hospitals in 28 states, and that CHS's revenue in 2007 derived from these hospitals was $7.2 billion.   The website excerpts attached by Plaintiff, however, do not substantiate Plaintiff's claims but rather only display a facility map of hospitals in New Mexico and links to pages containing job postings.   *See supra* p. 3.

The Court concludes that Plaintiff's evidence of a website owned and operated by an entity other than Defendant CHSI cannot support a finding that the Defendant CHSI *itself* purposely created a substantial connection with the forum state.   *Cf. OMI Holdings*, 149 F.3d at 1091 (citing *Asahi*, 480 U.S. at 109).   Furthermore, courts have determined that a passive website cannot support the assertion of personal jurisdiction.   *See Soma Med. Intern v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999) (citations omitted).   In addition, even if the website excerpts could establish that Defendant CHSI operated the site or was responsible for posting the job listings, Plaintiff has failed to point to facts showing how Plaintiff's injuries arose out of or relate to those minimum contacts.   *Cf. Burger King*, 471 U.S. at 472 (requiring a substantial connection between the injury and the defendant's contacts with the forum state).   For these reasons, the website www.chs.net is not a sufficient contact to show that Defendant CHSI has purposely availed itself of the privilege of conducting activities within New Mexico and that the injury arose out of those contacts.[2]

To the extent that Plaintiff argues that the website, although owned and operated by CHSPSC, nonetheless binds Defendant CHSI through the use of inclusive language such as "we," "us," "our," and "the Company," this argument is unavailing.   The "Legal Notice" on the website specifically notifies viewers that the site uses inclusory language to comply with SEC and NYSE

---

[2] Plaintiff's citation to *Cronin v. Sierra Medical Center*, 10 P.3d 845 (N.M. Ct. App.), *cert. denied*, 10 P.3d 843 (N.M. 2000) and 532 U.S. 9212 (2001), in which the court determined that a defendant hospital located in El Paso, Texas, had established minimum contacts with New Mexico by "intentionally initiat[ing] commercial activities in New Mexico for the purpose of realizing pecuniary gain," *id.* at 849, does not persuade the Court otherwise.   In *Cronin*, the defendant El Paso hospital itself had *directly* advertised in New Mexico telephone directories and through New Mexico television commercials.   *See id.*   In contrast, Plaintiff seeks to establish the Court's jurisdiction over a remote parent company by virtue of an internet website that is neither owned nor operated by Defendant CHSI.

requirements of "plain English" and that these statements are not intended to bind CHSI or imply that the actions of one legal entity can be attributed to another.   Furthermore, general references by a parent corporation to the business of a subsidiary as being part of the business of the parent does not confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations.   *See, e.g., Moody v. Charming Shoppes of Delaware, Inc*., No. C07-6073, 2008 WL 2128955, at *4 (N.D. Cal. May 20, 2008) (use of "we," "our," [and] "the Company" in an annual form 10-K report to the SEC "are merely inclusive statements that contend that [the subsidiary's] employees are its own employees," which "is a common business practice, and as the sole owner of [the subsidiary], [the parent] may make generic statements about [the subsidiary]" without rendering the parent subject to personal jurisdiction where the subsidiary is present) (citations omitted).

Plaintiff also identifies excerpts from policies and forms as well as certain job descriptions provided by Mimbres Hospital.[3]   The policy regarding recruiting and hiring provides that the "CHS Corporate Administration Department" handles recruiting for all key hospital management positions and can provide assistance in recruiting for other positions, and that the "CHS CEO or CFO approval" is required for postings on the "[c]orporate web site."[4]   The policy regarding hospital safety and patient management and the position descriptions display the "CHS" logo, and

---

[3]   Plaintiff indicates that he expects to receive in discovery, but has not yet received, similar policies and forms from the Hospital in this case.   Consistent with its obligation to resolve all factual disputes in Plaintiff's favor, *see Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995), the Court will assume that these policies will be produced in this case.

[4]   Because the Court must resolve all factual disputes in the plaintiff's favor, *see Wenz*, 55 F.3d at 1505, the Court will assume that references to the "CHS CEO or CFO" and the "CHS Corporate Administration Department" refer to Defendant CHSI's chief executive or chief financial officer and Defendant CHSI's Corporate Administration Department.

several of the descriptions require the hired individual to acknowledge that he or she understands and will comply with the "CHS Code of Conduct."

Plaintiff has presented no evidence, however, that the policies or forms were provided by Defendant CHSI or that Defendant CHSI was responsible for recommending or requiring the Hospital to implement the "CHS Code of Conduct."   To the contrary, the evidence indicates that it was CHSPSC who was licensed to use the "CHS" logo, and that it was CHSPSC that provided form policies to the Hospital.   Furthermore, the Hospital was not required to adopt the policies but rather had the choice to do so, and it was the Hospital's Board of Trustees that voted to adopt the CHS Code of Conduct.   Finally, even if Plaintiff had established that it was Defendant CHSI that had provided the policies and forms to the Hospital, Plaintiff has failed to indicate how Plaintiff's injuries arose out of such a contact with the Hospital.   *Cf. Burger King*, 471 U.S. at 472.   For these reasons, the policies and form job descriptions do not establish that Defendant CHSI purposely availed itself of the privilege of conducting business in the forum.

As further evidence, Plaintiff attaches an unverified, uncertified newspaper article from 2001 in which the CEO of Defendant CHSI makes various collective statements regarding recruiting in local facilities and in which the author explains that CHSI makes changes to the financial systems of the hospitals it acquires.   The article, however, provides absolutely no information about the ownership structure of the Hospital, the role of Defendants with respect to the Hospital, or how Plaintiff's claims purportedly arose out of Defendants' alleged contact with New Mexico.   Other courts have considered whether similar newspaper articles confer personal jurisdiction and have refused to rule that they are sufficient to establish the necessary minimum contact.   *See Shaoulian-Tehrani v. Katami*, No. 06-CV-6868, 2008 WL 1790386, at *2 (S.D.N.Y. Apr. 21, 2008) (rejecting plaintiff's reliance on an unverified newspaper article to establish

personal jurisdiction because article was hearsay).[5]   In addition, the newspaper article is dated April 24, 2001, and Plaintiff has failed to indicate how his injuries in 2008 arose out of or relate to Defendant CHSI's purported 2001 contact with New Mexico.   *Cf. Burger King*, 471 U.S. at 472; *see also Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2000) (the minimum contact must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit).   Accordingly, the Court concludes that the newspaper article fails to show that Defendant CHSI has purposely availed itself of the privilege of conducting activities within New Mexico or that the Plaintiff's injuries arose out of any contact by Defendant CHSI with the forum state.

Plaintiff's last pieces of evidence likewise fail to establish that the Court has specific jurisdiction over Defendant CHSI.   Plaintiff points to discovery responses by Mimbres Hospital in an unrelated case indicating that Defendant CHSI owned Mimbres Hospital.   This piece of evidence, however, was subsequently corrected by Mimbres Hospital in a supplemental interrogatory response explaining that CHSI was a remote parent company of Mimbres. Furthermore, for purposes of specific jurisdiction, which requires a nexus between a defendant's contact and the underlying injury, *cf. Burger King*, 471 U.S. at 472, Defendant CHSI's alleged ownership of another hospital that is not connected to the underlying injuries in this case cannot serve as the basis of specific jurisdiction over Defendant CHSI.

Likewise, the fact that Defendant CHSI opted to defend complaints for medical negligence

---

[5]   *Cf. Steinburch v. Cutler*, 518 F.3d 580, 589 (8th Cir.) (plaintiffs failed to establish personal jurisdiction by "merely submit[ting] various newspaper articles that referred to [defendant] as publisher of [a blog]"), *cert. denied*, 555 U.S. 939 (2008); *Moody*, 2008 WL 2128955, at *4 (collective references in press releases do not establish personal jurisdiction) (citation omitted).

in three unrelated cases against hospitals remotely owned by CHSI is not relevant to the question of whether Defendant CHSI purposely availed itself of the privileges of conducting business in New Mexico causing an underlying injury that arose out of that contact.   Furthermore, a party's consent to jurisdiction in one case extends to that case alone.   *See U.S. v. Subklew*, No. 3518-CIV-GRAHAM, 2001 WL 896473, at *3 (S.D. Fla. June 5, 2001) (finding no personal jurisdiction over a defendant, even where the defendant previously had defended an action in that same forum) (citation omitted); *Wallace v. International Lifestyles*, No. 06-1468, 2008 WL 623811, at *5 (E.D. Pa. Mar. 6, 2008) (holding that prior litigation does not confer jurisdiction in a subsequent suit even if involving the same subject matter) (citation omitted).

The evidence cited by Plaintiff fails to meet his prima facie burden of establishing that Defendant CHSI purposefully established minimum contacts in the forum state or that Plaintiff's injuries arose out of those contacts.   *See Burger King*, 471 U.S. at 474 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Rather, the uncontroverted evidence shows that Defendants did not make any clinical decisions with respect to Plaintiff's treatment, did not require the Hospital to adopt or maintain policies, did not make any representations to Plaintiff, did not pay, supervise, train, or credential any of the doctors or nurses that treated Plaintiff, did not control the number of doctors and nurses on staff or the manner in which those individuals' work was to be performed, and did not furnish the equipment involved in treating Plaintiff.   Although Plaintiff has presented evidence that Defendant CHSI had the right to approve all key management personnel at the Hospital, Plaintiff has not presented any evidence that Plaintiff's injury arose out of this right (*e.g.*, that one of the doctors involved in treating Plaintiff was in a "key management position" and that Defendant CHSI was required to approve the hiring of this physician).   Indeed, Plaintiff has presented no evidence that his injury arose out of any contact that CHSI itself created

13

with the forum state.  *Cf. Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 ((1987).

Accordingly, Plaintiff has failed to meet his prima facie burden of showing that the Court has

specific jurisdiction over Defendant CHSI.

       Plaintiff's argument that the Supreme Court's holding in *Burger King Corp. v. Rudzwicz*

requires a different result is unavailing and does not persuade the Court to find otherwise.  The

*Burger King* Court held a Michigan franchisee subject to specific jurisdiction in Florida for a

dispute that "grew directly out of a 'contract which had *substantial* connection with [Florida].'"

*Id.* at 479 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).  The case at bar is

distinguishable.  Plaintiff's action arose out of alleged negligence of the Hospital, which was

remotely-owned by Defendant CHSI, and Plaintiff has failed to establish that the injury has any

demonstrable relationship to Defendant CHSI's purported role as the entity responsible for

approving key management positions, approving job postings on the corporate website, or any

other contact with New Mexico created by Defendant CHSI.

       Likewise, Plaintiff's reliance on *State Farm Mutual Auto Insurance Co. v. Conyers* is

similarly misplaced.  In *Conyers*, an insurance company filed a declaratory judgment action in

New Mexico on an insurance policy that the defendant purchased in New Mexico, asking the court

to determine coverage of its insured.  *See* 784 P.2d 986, 987 (N.M. 1989).  The *Conyers* court

rejected the insured defendant's argument that the court did not have personal jurisdiction,

explaining that the plaintiff's "cause of action for declaratory judgment [was] closely related to the

. . . negotiation and purchase of insurance in New Mexico."  *Id.* at 988.  The court further

explained that if the defendant had not purchased insurance in New Mexico, the cause of action

itself—*i.e.*, the action seeking a declaration of coverage—would not exist.  *Id.*

Here, in contrast, Plaintiff has made no showing that his injuries arose out of any specific contact created by Defendant CHSI itself with New Mexico.   Plaintiff argues that "[h]ad CHS not acquired six (6) New Mexico hospitals . . . no cause of action against it would exist."   Pl's Resp. to Def. CHSI's Mot. to Dismiss, p. 13.   Plaintiff, however, misunderstands the nexus requirement. The substantial connection required is between the defendant's purported contacts with the forum and the cause of action itself (and not between the defendant's contacts and the plaintiff's decision to name the defendant in the litigation).   *See Conyers*, 784 P.2d at 988; *Burger King*, 471 U.S. at 472.   The correct inquiry, then, is whether the lawsuit arose out of Defendant CHSI's acquisition of six hospitals in New Mexico.   Plaintiff, however, has failed to allege any facts indicating that his injury arose of out CHSI's acquisition of the Hospital.   *Compare Cronin v. Sierra Medical Center*, 10 P.3d 845 (N.M. Ct. App.) (finding a substantial connection between plaintiff's injuries and the defendant's contacts where plaintiff had seen the televised commercial advertisements for the hospital and decided to have the surgery performed at the hospital based on the advertisements), *cert. denied*, 10 P.3d 843 (2000) *and* 532 U.S. 921 (2001).   Rather, the evidence before the Court indicates only that Plaintiff's injuries arose out of the alleged medical negligence of professionals at the Hospital and that the injury would have happened even if Defendant CHSI had not acquired the Hospital.   Accordingly, the Court concludes that Plaintiff has failed to meet his prima facie burden.[6]

---

[6]   On September 9, 2012, almost six months after briefing on Defendant CHSI's Motion to Dismiss for Lack of Personal Jurisdiction was complete, Plaintiff filed—without seeking leave of this Court—a Supplemental Brief and Exhibits in Opposition to CHSI's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 57] ("Supplemental Brief").   Defendant CHSI argues that the Supplemental Brief is in effect a sur-reply attaching new evidence, which requires leave of court, *see* D.N.M.LR-Civ. 7.4(b), and that the Court should strike Plaintiff's filing.   The Court agrees

2.      <u>Defendant CHIC</u>

Plaintiff's theory of specific jurisdiction over Defendant CHIC is vague and unsupported by any facts, case law, or other authority.   Plaintiff argues in conclusory fashion that Defendant CHSI has various minimum contacts with the Hospital that arise out of or relate to the underlying alleged injuries in this case, that Defendant CHIC "likely" was created to facilitate the real estate interests of its parent corporation Defendant CHSI, and that CHIC was "likely" involved in facilitating CHSI's operation and management of the Hospital.   Plaintiff does not cite any authority, however, indicating how Defendant CHIC's "likely" involvement meets the minimum contacts or substantial connection requirements for specific jurisdiction to exist.

The uncontroverted evidence before the Court indicates that Defendant CHIC has absolutely no contacts with the forum state or the Hospital itself.   Indeed, the evidence shows that Defendant CHIC is a holding company with no direct or indirect ownership interest in the Hospital.   Plaintiff has failed to point to any facts establishing that Defendant CHIC has any contacts with New Mexico not to mention any facts indicating how Plaintiff's injuries arose out of Defendant CHIC's contacts with the forum.   *Cf. Burger King*, 471 U.S. at 472.

Rather, Plaintiff's theory of personal jurisdiction over Defendant CHIC is based upon bootstrapping Defendant CHIC's contacts to those of Defendant CHSI.   As such, Plaintiff's claim necessarily fails, for the Court already has determined that Plaintiff has not met his prima facie burden of establishing that the Court has specific jurisdiction over Defendant CHSI.

_____

and therefore strikes the Supplemental Brief.  The Court further notes that it has reviewed the newly-submitted evidence and concludes that the evidence does not support the assertion of personal jurisdiction over CHSI for the reasons stated herein and for the reasons articulated by CHSI in its response to the Supplemental Brief.   *See* CHSI's Mot. to Strike, or, in the Alternative, Supp. Reply Br. in Support of Mot. to Dismiss for Lack of Personal Jurisdiction, pp. 3-7.

Furthermore, bootstrapping jurisdiction of CHIC to CHSI's contacts is not sufficient to show that Defendant CHIC *itself* created contacts with the forum state. *Cf. Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987). For these reasons, Plaintiff has failed to meet his prima facie burden of establishing that the Court has specific jurisdiction over Defendant CHIC.

B.    General Jurisdiction

The Court must next consider whether Plaintiff has established a prima facie case of general jurisdiction. General jurisdiction requires a plaintiff to demonstrate that a defendant's contacts with the forum state were so pervasive as to confer personal jurisdiction by the continuous and systematic nature of the defendant's in-state activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). Stated differently, the defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2001); *see also Rosenberg v. Deutsche Bank AG*, No. 11-CV-2200, 2012 WL 1963356 (D. Colo. May 22, 2012). If a plaintiff makes a prima facie showing of general jurisdiction, a court can exercise personal jurisdiction over the defendant even if the plaintiff's underlying suit is unrelated to the defendant's contacts with the forum state. *See Helicopteros*, 466 U.S. at 415.

1.    Continuous and Systematic Contacts

In general, a corporate entity's contacts are sufficiently continuous and systematic such that the entity is "at home" in the forum state when the state is the entity's domicile, the place of incorporation, or the principal place of business. *See Goodyear Dunlap*, 131 S. Ct. at 2853-54 (citation omitted); *accord Rosenberg*, 2012 WL 1963356, at *5 (citation omitted). The Tenth

17

Circuit has explained that in assessing contacts with a forum, relevant factors include "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements . . . or bank accounts; and (4) the volume of business conducted in the state." *Trierweiler*, 90 F.3d at 1533 (citing 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1069, at 348-55 (2d ed. 1987) (citing cases)).

The evidence does not support any basis for finding that Defendants were essentially "at home" in New Mexico.  The uncontroverted evidence establishes that Defendant CHSI is a Delaware corporation with its principal place of business is in Tennessee, and that Defendant CHIC is a Delaware limited liability company.  Furthermore, neither Defendant transacts business in New Mexico, is registered to do business in New Mexico, has appointed an agent for service of process or otherwise in New Mexico, has an office or place of business in New Mexico, has real property, clients, or employees in New Mexico, or advertises, markets, or offers services for sale in New Mexico.  *Cf. Rosenberg*, 2012 WL 1963356, at *6 (finding no general jurisdiction where defendants, although registered with the Colorado Secretary of State, had no official presence in Colorado in that they were not incorporated, did not have their principal place of business, and did not own any property, maintain any offices, or employ any individuals in Colorado).  Defendants' lack of official presence in New Mexico makes it clear that they have not engaged in continuous and systemic activity in the forum state.

Plaintiff presents no evidence that Defendant CHIC has any presence at all in New Mexico, and extremely limited evidence that Defendant CHSI has any contact at all with New Mexico. With respect to Defendant CHSI, the only evidence to which Plaintiff points showing any contact

18

with the forum state are form policies requiring "CHS" corporate approval for certain key management positions, a newspaper article from 2001 quoting Defendant CHSI's CEO using collective statements when referring to individual facilities remotely owned by CHSI, and three answers showing that Defendant CHSI previously defended litigations in the forum state.   The Court already has determined that this evidence is not sufficient to establish specific personal jurisdiction over Defendants.   Likewise, for the same reasons, this evidence also is insufficient to establish the more stringent general jurisdiction minimum contact standard of a continuous and systematic presence in New Mexico.   *Cf. id.* at *5.

The contacts in this case are even more limited than in other cases where the contacts between the defendant and the forum were found inadequate to satisfy the constitutional standard for exercising general jurisdiction.   *See, e.g., Helicopteros Nacionales*, 466 U.S. at 418 ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase[s]") (footnote omitted); *Am. Exp. Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1179-81 (1st Cir. 1989) (maintenance of bank accounts and training of employees in forum are insufficient to confer general jurisdiction); *Rosenberg*, 2012 WL 1963356, at *6 (being licensed to do business in Colorado, participating in at least 50 foreclosure actions in Colorado during the relevant time frame, and having an employee in Colorado are insufficient to confer general jurisdiction). Plaintiff's limited evidentiary showing does not establish that Defendants have a continuous and systematic presence in New Mexico.   The Court therefore concludes that Plaintiff has not met his prima facie burden of demonstrating that the Court has general jurisdiction over Defendants.

2.      Alter Ego or Agency

a.      Defendant CHSI

To the extent that Plaintiff attempts to use Defendant CHSI's indirect ownership of its subsidiary the Hospital as a means of establishing general jurisdiction over Defendant CHSI by contending that CHSI conducted business in New Mexico through its subsidiary, this attempt fails. The general rule is that "judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[, even if] the parent owns all of the subsidiary's stock."   Restatement (Second) of Conflicts of Laws § 52 cmt. b (1971); *Alto Eldorado Partnership v. Amrep Corp.*, 124 P.3d 585, 596 (N.M. Ct. App. 2005) (as a general matter, "the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state") (internal quotations and citation omitted).

An exception to this rule exists, however, where circumstances justify disregard of the corporate entity, and in such cases, the contacts of the subsidiary may be imputed to the parent for purposes of establishing general jurisdiction over the parent.  *See Quarles v. Fuqua Indus.*, 504 F.2d 1358, 1362 (10th Cir. 1974) (for purposes of personal jurisdiction, a parent company has a separate corporate existence from the subsidiary only if there is an absence of circumstances justifying disregard of the corporate entity); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (citation omitted), *cert. denied*, 544 U.S. 974 (2005); *see also Good v. Fuji Fire & Marine, Ins. Co., Ltd.*, No. 07-2068, 2008 WL 822453, at *3 (10th Cir. Mar. 28, 2008) (citation omitted); *SGI Air Holdings II LLC v. Novartis Int'l AG,* 239 F. Supp. 2d 1161, 1165-66 (D. Colo. 2003).   A court can disregard the corporate form and impute jurisdiction to a parent based upon its

20

subsidiary's contacts when the subsidiary is simply an agent doing the business of the parent, *see Quarles*, 504 F.2d at 1364 (agency theory applies when a wholly-owned subsidiary's activities are of such a character as to amount to doing business of the parent) (internal quotation marks and citation omitted), or when the parent uses the subsidiary as an instrumentality or alter ego to conduct the parent's own business, *see id.* at 1362 (alter ego theory applies when the parent uses the wholly-owned subsidiary as "an instrumentality to conduct [the parent's] own personal business") (citations omitted).

In the case at bar, Plaintiff argues that under an agency or alter ego theory, personal jurisdiction over the subsidiary Hospital should support personal jurisdiction over the parent CHSI. Courts have determined that although questions of agency and alter ego might require a separate analysis when used to assert liability under substantive corporate law, there is no significant distinction between the two theories for jurisdictional purposes. *See Alto*, 124 P.3d at 592 (citation omitted); *see also SGI Air Holdings*, 239 F. Supp. 2d at 1166 (explaining that no significant distinction between the agency and alter ego theories exists for jurisdictional purposes). Therefore, while agency and alter ego are different legal concepts, for jurisdictional purposes they often depend upon the same facts. *See id.*

The relevant factual inquiry under either theory is whether the parent actually controlled its subsidiary—*i.e.*, exercised "domination of the day to day business decisions of the subsidiary and a disregard of the corporate entity of the subsidiary," *Quarles*, 504 F.2d at 1364—thereby giving rise to personal jurisdiction over the parent. *See SGI Air Holdings*, 239 F. Supp. 2d at 1166; *Alto*, 124 P.3d at 592. In evaluating the extent of a parent's control over a subsidiary for jurisdictional purposes, courts have considered, among other things, whether the directors or executives of the subsidiary take direction from the parent corporation rather than acting independently in the

21

interest of the subsidiary, whether the parent and subsidiary share directors or officers in common, *see Quarles*, 504 F.2d at 1363; *Cruttenden v. Mantura*, 640 P.2d 932, 934-35 (N.M. 1982); *Alto*, 124 P.3d at 596, whether the parent corporation pays the salaries, expenses, or losses of the subsidiary, whether the parent corporation finances the subsidiary, *see Cruttenden*, 640 P.2d at 934-35, whether the parent exercised control over the subsidiary's day-to-day operations, *see Quarles*, 504 F.2d at 1363; *Alto*, 124 P.3d at 596, and whether the two corporations have separate auditors, books and records, offices, officers and staffs, bank accounts, tax returns, payrolls, and purchasing, *see Quarles*, 504 F.2d at 1363.   The inquiry turns on the facts of each case.   *See Alto*, 124 P.3d at 594-95 (citation omitted).

Plaintiff maintains that the alter ego or agency theories apply here, arguing that the form recruiting and hiring policies and the 2001 newspaper article prove Defendant CHSI was involved in recruiting the Hospital's employees and that CHSI was responsible for making changes to its hospitals' financial systems.   Plaintiff cites the New Mexico Court of Appeals' decision in *Alto Eldorado Partnership v. Amrep Corporation* in support of his claim that the Court should disregard the corporate form and find personal jurisdiction over Defendant CHSI based upon the Hospital's contacts with New Mexico.   *See* 124 P.3d at 596.   In *Alto*, the court of appeals applied the alter ego theory and concluded that the plaintiffs had made a prima facie case that the parent did not simply own the subsidiary but rather completely controlled the subsidiary to the point where the subsidiary existed as little more than an instrument to serve the parent's real estate interests.   *See id*.   In evaluating the extent of control, the *Alto* court considered that the parent controlled the subsidiary through the parent's CEO, that the subsidiary's day-to-day operations were run by an employee of the parent, that the subsidiary's concerns were ignored in favor of focusing on the concerns of the parent, that the subsidiary's board members also worked for the

parent or a company that shared the same CEO as the parent's CEO, that the subsidiary's board of directors did not direct any action pertaining to the litigation but rather the parent did, and that the parent subsidized the subsidiary's losses.   *See id.*

The facts in *Alto*, however, are distinguishable.   Unlike the plaintiff in *Alto*, the Plaintiff here has failed to show that CHSI controlled the Hospital or its directors or executives, that CHSI ran the Hospital's day-to-day operations, that the entities shared board members, that CHSI subsidized the Hospital's losses, or that the Hospital's concerns were subordinated to CHSI's.   *Cf. id.*   Likewise, with respect to other factors considered by New Mexico courts and the Tenth Circuit, Plaintiff has failed to establish that CHSI financed the subsidiary, that CHSI paid the subsidiary's salaries or expenses, *see Cruttenden*, 640 P.2d at 934-35, that CHSI exercised control over the Hospital's day-to-day operations, or that CHSI and the Hospital shared accounting and banking records, auditors, offices, officers, staffs, tax returns, payrolls, or purchasing, *see Quarles*, 504 F.2d at 1363.   Furthermore, Defendants have not entered into an agreement to combine money, property, or time to provide care at the Hospital, the Hospital is not required to adopt any policies or bylaws at Defendants' request, Defendants do not make clinical decisions or control diagnosis or treatment of patients, and Defendants do not control the number of doctors and nurses on staff or the manner in which those individuals' work is to be performed.   Rather, the only evidence that indicates Defendant CHSI may have any control over the Hospital is the recruiting and hiring policy and the 2001 newspaper article.[7]   This evidence, however, is far from the type of

_____

[7] The remaining evidence identified by plaintiff does not implicate Defendant CHSI at all, but rather indicates that CHSPSC operated a webpage, that local facilities were allowed to add job postings to CHSPSC's website, that CHSPSC provided the Hospital with certain policies and forms, and that CHSPSC recommended that the Hospital adopt the "CHS Code of Conduct."

evidence showing "domination of the day to day business decisions of the [subsidiary] and a disregard of the corporate entity of the [subsidiary]."   *Id.* at 1364.

The recruiting and hiring policy provided to the Hospital by CHSPSC requires the "CHS Corporate Administration Department" to handle recruiting for all key hospital management positions and requires "CHS CEO or CFO approval" for postings on the "[c]orporate web site." This general oversight, assuming it was exercised by Defendant CHSI, *see supra* note 4, is not sufficiently detailed or pervasive to constitute domination over the Hospital's day-to-day operations.   Courts repeatedly have held that a parent may articulate general policies and procedures for its subsidiary without subjecting itself to jurisdiction in the forum where its subsidiary is present.   *See, e.g.*, *Quarles*, 504 F.2d at 1363 (a parent's exercise of general supervision, coordination, and financial control over the subsidiary is insufficient to establish imputed jurisdiction); *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003) (plaintiff's claim that the parent has "overall financial and policy control" over its subsidiary is not enough to impute jurisdiction, for such control is inherent in ownership and would render every parent present wherever a wholly owned subsidiary was present); *Arce v. Aramark Corp.*, 239 F. Supp. 2d 153, 172 (D.P.R. 2003) (a subsidiary's employee handbook with the name of the parent on it is insufficient to warrant the exercise of personal jurisdiction over the parent); *Hvide Marine Int'l v. Employers Ins.*, 724 F. Supp. 180, 187 (S.D.N.Y. 1989) (the distribution by a subsidiary of an employee handbook that is typically distributed to all of the parent's subsidiaries is insufficient to indicate the requisite degree of control to confer personal jurisdiction on the parent).

Furthermore, even though the recruiting and hiring policy requiring approval of key management placements is arguably more specific than an overall general articulation of policy, Defendant CHSI did not mandate that the Hospital adopt the recruiting and hiring policy.   Rather,

pursuant to the Management Agreement between CHSPSC and the Hospital, CHSPSC recommended and provided the form policies to the Hospital, and the Hospital had the right to exercise its own discretion to adopt the policies.   The Management Agreement was negotiated by the Hospital and CHSPSC, and neither the Management Agreement nor the policies were recommended or required by Defendant CHSI.

The other piece of evidence arguably relevant to control is the 2001 newspaper article in which the CEO of Defendant CHSI makes various collective statements implying that CHSI recruits physicians to local facilities and in which the author reports that post-acquisition CHSI raises sales by adding services and recruiting physicians.   As discussed previously, collective references in newspaper articles do not establish personal jurisdiction.   *See supra* p. 11. Likewise, they are insufficient to establish the requisite amount of control over a subsidiary's day-to-day operations to justify setting aside the corporate form and basing a parent's personal jurisdiction on the presence of its subsidiary in the forum state.   *Cf. F. Hoffman-LaRoche v. Superior Ct.*, 30 Cal. Rptr. 3d 407, 422 (Cal. Ct. App. 2005) (consolidated reporting and the use of "we" or "the company" in media releases are typical and actually expected of affiliated or wholly-owned companies, and such facts do not establish agency for purposes of jurisdiction).

On the facts here, Plaintiff has failed to identify circumstances that indicate that Defendant CHSI exercises domination over the day-to-day business decisions of the Hospital or that otherwise would justify a disregard of the corporate form.   Specifically, Plaintiff has failed to point to facts indicating that the Hospital was simply an agent doing the business of its parent or that Defendant CHSI used the Hospital as an instrumentality or alter ego to conduct CHSI's own business.   *Cf. Quarles*, 504 F.2d at 1362, 1364.   Accordingly, the Court concludes that Plaintiff has not satisfied his prima facie burden of establishing that the Court may exercise general

25

jurisdiction over Defendant CHSI based on the Hospital's contacts with the forum state.

b.      Defendant CHIC

A jurisdictional claim of alter ego or agency arises when a plaintiff seeks to impute a subsidiary's contacts with a forum state to the parent who is not present in the state.   *See supra* p. 20.   Plaintiff has not cited, and this Court has not found, any case holding or even suggesting in dicta that the agency or alter ego theories may be extended to impute a subsidiary's contacts with a forum state to a third-party subsidiary of a shared parent, where neither the out-of-state parent nor the out-of-state third-party subsidiary has any presence in the forum.   To the extent Plaintiff attempts to bootstrap Defendant CHIC to his alter ego or agency claim regarding Defendant CHSI, the Court is not persuaded.

Plaintiff cites *Alto Eldorado Partnership v. Amrep Corporation* to attempt to link Defendant CHIC to the Hospital and establish the Court's jurisdiction over CHIC.   Plaintiff argues that the *Alto* court found sufficient minimum contacts to support personal jurisdiction in New Mexico over a holding company incorporated in Oklahoma that owned a subsidiary incorporated in New Mexico because the subsidiary was created to facilitate the real estate interests of the parent.   *See* 124 P.3d 585, 596 (N.M. Ct. App. 2005).   Plaintiff, however, misconstrues *Alto*.   The *Alto* court imputed the subsidiary's contacts with New Mexico to the parent because the court determined that the subsidiary was akin to an alter ego of the parent.   *See id.*   The *Alto* court therefore set aside the corporate form and based the parent's personal jurisdiction on the subsidiary's contacts with New Mexico.   *See id.*

Here, in contrast, Plaintiff seeks to impute jurisdiction not to the parent (Defendant CHSI) of the subsidiary with the actual contacts to the forum state (the Hospital), but rather to a third-party corporation (Defendant CHIC) twice removed from—and with no ownership interest

26

in—the subsidiary (the Hospital). *Alto* provides absolutely no basis for such an extension, and Plaintiff makes no argument supported by any authority to merit such an extension. The Court therefore concludes that Plaintiff has failed to establish a prima facie showing of general jurisdiction over Defendant CHIC based upon an alter ego or agency theory.

C.   Request for Additional Discovery

In his response to the motions to dismiss, Plaintiff argues that discovery is pending and will "likely" disprove Defendants' claims that that they are not involved in the operation of the Hospital. The Court, however, does not find that jurisdictional discovery in this matter would be fruitful. The Federal Rules of Civil Procedure required Plaintiff to have a good-faith basis for asserting personal jurisdiction over Defendants prior to filing his complaint. Plaintiff, however, has not established even a colorable claim for jurisdiction. Much of the evidence attached by Plaintiff, such as the website www.chs.net or the "CHS" logo on the form policies provided to the Hospital by CHSPSC, has no bearing on Defendants' contacts with the forum state. *See supra* note 6. The remaining evidence is vague, conclusory, or too remote and generic to support any jurisdictional claim. Plaintiff's alter ego and agency assertions likewise are unsupported by any colorable facts. Plaintiff's claims regarding personal jurisdiction over Defendant CHIC are even more attenuated and remote than those over Defendant CHSI. Furthermore, Plaintiff has not identified any specific controverted jurisdictional facts that warrant further discovery.[8]   The Court

---

[8] The Court, consistent with its obligation to resolve all factual disputes in Plaintiff's favor, *see Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995), has already assumed that Plaintiff would receive in discovery the same or similar forms and policies that were produced in the unrelated litigation involving Mimbres Hospital, and the Court has based its evaluation of minimum contacts on this assumption. Plaintiff therefore need not receive additional time to conduct discovery to receive these forms and policies.

therefore concludes that any further discovery would be a fishing expedition.   *See Sizelove v. Woodward Regional et al.*, No. CIV-11-0230, 2011 WL 5087997, at *3 (W.D. Okla. Oct. 25, 2011).   Accordingly, the Court denies Plaintiff's request for additional time to conduct discovery.

II.   <u>Traditional Notions of Fair Play and Substantial Justice</u>

If a court concludes that a defendant has minimum contacts with the forum state, the court next must determine whether the exercise of personal jurisdiction based on those contacts is consistent with traditional notions of "fair play and substantial justice."   *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990) (internal quotations and citations omitted).   In determining whether a court's exercise of personal jurisdiction is " 'reasonable' in light of the circumstances surrounding the case," *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998), a court should consider the following factors:   (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.   *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005) (internal quotations and citation omitted).

The Court need not decide, however, whether the Court's exercise of personal jurisdiction in this case would be "reasonable."   The Court already has concluded that Plaintiff has failed to satisfy his prima facie burden of establishing that Defendants had sufficient minimum contacts with New Mexico to permit the Court's exercise of jurisdiction over them.   The Court therefore grants Defendants' motions to dismiss on this ground alone.

**CONCLUSION**

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendant Community

Health Systems, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 8] and

Defendant Community Health Investment Company, LLC's Motion to Dismiss for Lack of

Personal Jurisdiction [Doc. 9] are GRANTED.


DATED this 27th day of September, 2012.



_____
MARTHA VÁZQUEZ
United States District Court Judge

29